UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENDRA T.-G.[1],                    )
                                    )
                    Plaintiff,      )
                                    )
            v.                      )        No. 1:21-cv-01022-DLP-RLY
                                    )
KILOLO KIJAKAZI,                    )
                                    )
                    Defendant.      )

### ORDER

Plaintiff Kendra T.-G. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Disability Insurance Benefits ("DIB") under Title II and

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

*See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby

**REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this

matter for further proceedings.

## I.    Procedural History

On June 7, 2019, Kendra filed applications for Title II DIB and Title XVI SSI.

(Dkt. 13-2 at 13, R. 12). Kendra's application alleged disability resulting from

fibromyalgia; bipolar disorder; depression; back problems; lung disorder; anxiety;

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

and acid reflux. (Dkt. 13-6 at 14, R. 241). The Social Security Administration ("SSA") denied Kendra's claim initially on August 15, 2019, (Dkt. 13-3 at 24-25, R. 86-87), and on reconsideration on November 20, 2019. (Id. at 50-51, R. 112-13). On December 27, 2019, Kendra filed a written request for a hearing, which was granted. (Dkt. 13-4 at 41, R. 153). On November 2, 2020, Administrative Law Judge ("ALJ") Timothy Wing conducted a hearing, where Kendra, her counsel, and vocational expert, Carmine Abraham, all appeared telephonically. (Dkt. 13-2 at 37-39, R. 36-38). On November 13, 2020, ALJ Wing issued an unfavorable decision finding that Kendra was not disabled. (Dkt. 13-2 at 13-30, R. 12-29). Kendra appealed the ALJ's decision on November 13, 2020, and, on February 19, 2021, the Appeals Council denied Kendra's request for review, making the ALJ's decision final. (Dkt. 13-4 at 79-81, R. 191-93; Dkt. 13-2 at 2-4, R. 1-3). Kendra now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.    Standard of Review

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot

engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a)[2]. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

---

[2] Because the statutory references for SSI and DIB claims are substantially similar, the Undersigned will reference them interchangeably throughout this opinion.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Kendra is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific

evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   Background

#### A. Factual Background

Kendra was forty-six years old as of the alleged onset date of May 2, 2019. (Dkt. 13-2 at 15, 29, R. 14, 28). She has a seventh-grade education. (Dkt. 13-2 at 43, R. 42). She has past relevant work history as a certified nursing assistant; home health aide; cashier, convenience store; and assistant retail manager. (Id. at 29, R. 28).

#### B. ALJ Decision

In determining whether Kendra qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Kendra was not disabled. (Dkt. 13-2 at 13-30, R. 12-29). At Step One, the ALJ found that Kendra had not engaged in substantial gainful activity since her alleged onset date of May 2, 2019. (Id. at 15, R. 14).

At Step Two, the ALJ found that Kendra has severe impairments of fibromyalgia; spinal disorder including disc degeneration, spinal stenosis, and cervical radiculopathy; systemic lupus erythematous; chronic obstructive pulmonary disease; obesity; biopolar disorder; and depressive disorder. (Dkt. 13-2 at 16, R. 15).

The ALJ also found that Kendra had nonsevere impairments of gastroesophageal reflux disease and a vitamin D deficiency. (Id.).

At Step Three, the ALJ found that Kendra's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926, considering Listings 1.04, 3.02, 11.00, 12.04, and 14.02. (Dkt. 13-2 at 16-19, R. 15-18). The ALJ also noted that he considered Kendra's obesity according to Social Security Ruling 19-2p and her fibromyalgia according to SSR 12-2p. (Id. at 18-19, R. 17-18). As to the "paragraph B" criteria, the ALJ concluded that Kendra had mild limitations in understanding, remembering or applying information and adapting or managing oneself and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (Id. at 19-20, R. 18-19).

After Step Three but before Step Four, the ALJ found that Kendra had the residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations: no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crawling, crouching, and climbing on ramps and stairs; must avoid occupations that require climbing on ladders, ropes, and scaffolds; must avoid frequent and concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, excessive vibration, extreme dampness, and humidity; limited to occupations that do not require frequent exposure to dangerous machinery and unprotected heights; limited to occupations requiring no more than

7

simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions and, in general, relatively few workplace changes; limited to occupations that require no more than occasional interaction with supervisors, coworkers, and members of the general public. (Dkt. 13-2 at 21, R. 20).

At Step Four, the ALJ concluded that Kendra is unable to perform her past relevant work as a certified nursing assistant, home health aide, cashier in a convenience store, and assistant retail manager. (Dkt. 13-2 at 29, R. 28). The ALJ then concluded that, considering Kendra's age, education, work experience, and residual functional capacity, Kendra could perform jobs that exist in significant numbers in the national economy, such as mail clerk, cleaner/polisher, laundry worker, garment sorter, marker/price marker, and routing clerk. (Id. at 29-30, R. 28-29). The ALJ thus concluded that Kendra was not disabled. (Id. at 30, R. 29).

## IV. ANALYSIS

Kendra asserts that the ALJ's decision should be remanded because (1) the ALJ did not properly analyze or account for the limitations found in the opinion of Plaintiff's treating nurse practitioner; (2) the ALJ failed to find that her hand limitations were the result of a medically determinable impairment; and (3) the ALJ's RFC did not adequately account for any hand and arm limitations. The Court will address each argument in turn.

### A. Nurse Practitioner Joyner's Opinion

First, Kendra argues that the ALJ's RFC analysis did not adequately account for the limitations found by Plaintiff's long-time treating Nurse Practitioner S. Kathryn Joyner. (Dkt. 17 at 12-20)[3]. Specifically, Kendra maintains that the ALJ did not properly explain why he discounted NP Joyner's medical opinion. (Dkt. 17 at 12-18).

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of h[er] greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). This so called "treating physician rule," however, was eliminated for claims, such as Kendra's, filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Nonetheless, the ALJ must still provide a written explanation for his conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion." *Varga v. Kijakazi*, No. 3:20-cv-575-JPK, 2021 WL 5769016, at *3 (N.D. Ind. Dec. 6, 2021).

"Opinion evidence is now governed by 20 C.F.R. § 404.1520. . . (2017)." *Id.* The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c. When considering the persuasiveness of any medical opinion, an ALJ must now

---

[3] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the Docket. The Undersigned has chosen to cite to the paginated numbers from the Docket.

consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of Social Security policies. *See Inman v. Saul*, No. 1:20-cv-231-DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021). The most important factors are the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability[4] and consistency[5] requires remand. *Tammy M. v. Saul*, No. 2:20-cv-285, 2021 WL 2451907 (N.D. Ind. June 16, 2021).

During her July 13, 2018 appointment with Nurse Practitioner Joyner, Kendra reported hand difficulties, stating that her hands were numb upon waking and when she was driving, and that she experienced swelling and weakness in her hands. (Dkt. 13-7 at 32, R. 346). Kendra was referred to orthopedics for evaluation and treatment of her bilateral hand numbness. (Id. at 33, R. 347). At her follow-up

---

[4] For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[5] The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2).

visit on September 4, 2018, Kendra reported still having numbness in both hands; on exam, her hands went numb with dorsiflexion. (Dkt. 13-7 at 28, R. 342). NP Joyner suggested that Kendra "see [orthopedics] about carpal tunnel syndrome." (Id. at 29, R. 343). At a follow-up visit on October 22, 2019, Kendra complained of decreased use of her hands and arms and that she could not do small manipulations with her hands. On exam, Kendra's hands were stiff and tender and had a limited range of motion. (Dkt. 13-8 at 5, R. 455). NP Joyner noted that Kendra had carried diagnoses of fibromyalgia[6] and multi-joint pain for several years. (Id.). That same day, NP Joyner filled out a Physical Assessment Form stating that due to Kendra's multi-joint pain in her hands, hips, knees, and back she would have significant limitations in her hands, fingers, and arms. (Dkt. 13-7 at 136, R. 450).

At a December 5, 2019 follow-up visit with NP Joyner, Plaintiff complained of pain in both arms, weakness in both arms and shoulders, and weakness in her hands. (Dkt. 13-9 at 16, R. 549). At this visit, Plaintiff was unable to keep her thumb and index fingers in an O against pressure, had decreased arm push/pull strength, and limited range of motion and decreased grip strength in her hands. (Id. at 17, R. 550). As a result of Plaintiff's complaints of neck pain with bilateral arm weakness and numbness and pain, NP Joyner sent Plaintiff for an MRI. (Dkt. 13-9 at 17, R. 550).

---

[6] Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory, and mood issues. *Fibromyalgia*, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited September 8, 2022).

Plaintiff saw Dr. Hellwarth with Reid Orthopedics on February 7, 2020 due to her complaints of neck pain that radiated into her arms and hands. Plaintiff reported that 60% of her pain occurred in the neck, while 40% of her pain occurred in the arms, including the shoulders, numbness in the elbows, and burning and numbness in both hands. (Dkt. 13-9 at 23, R. 556). On exam, Plaintiff had numbness in her small and ring fingertips bilaterally; had a positive Hoffmann's sign[7], right greater than left; Tinel signs[8] were positive for carpal tunnel bilaterally; decent wrist flexion and extension bilaterally; and weakness in right biceps and with finger extension bilaterally. (Dkt. 13-9 at 24-25, R. 557-58). Dr. Hellwarth noted that her cervical MRI showed multiple level advanced disc degeneration at C4-5, C5-6, and C6-7 with kyphosis and that the spinal cord was displaced posteriorly. (Dkt. 13-9 at 25, R. 558). In order to determine the etiology of her hand and arm symptoms, Dr. Hellwarth ordered an EMG and nerve conduction study to see if they were a result of cervical radicular pain or peripheral nerve compression. (Dkt. 13-9 at 20, R. 553).

At a July 10, 2020 visit with Nurse Practitioner Amanda Whitenack, Plaintiff continued to report muscle aches, muscle weakness, joint pain, and on exam her hands were stiff and tender with a limited range of motion. (Dkt. 13-9 at 6, R. 539). For her chronic multiple joint pain, Plaintiff was consistently treated with heavy

---

[7] Hoffman's sign is a test to examine the reflexes of the upper extremities and can help detect the possible existence of spinal cord compression of another underlying nerve condition. *What does a positive or negative Hoffmann sign mean?* https://www.medicalnewstoday.com/articles/322106 (last visited September 9, 2022).

[8] Tinel's sign is a test to help doctors diagnose nerve compression. A positive result is a tingling or "pins and needles" feeling when a healthcare provider taps the skin over a nerve. *Tinel's Sign*, https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last visited September 9, 2022).

narcotics, including morphine and tramadol. (Dkt. 13-7 at 15, 19, R. 329, 333; Dkt.

13-9 at 12, R. 545).

Additionally, nurse practitioners and physicians consistently diagnosed

Kendra with fibromyalgia, cervical radiculopathy[9], and systemic lupus

erythematosus[10], conditions that can cause numbness and weakness in the arms

and hands, and the ALJ recognized each of these as a severe impairment. (Dkt. 13-2

at 16, R. 15; Dkt. 13-7 at 15, 19, 25, 29, 114, 121, R. 329, 333, 339, 343, 428, 435;

Dkt. 13-8 at 6, 13, 19, 25, 29, 39, 44, R. 327, 333, 338, 343, 456, 489, 494; Dkt. 13-9

at 6-7, 17, 43, R. 539-40, 550, 576). Finally, Kendra was diagnosed with multiple

joint pain on almost every visit to her treating nurse practitioner. (Dkt. 13-7 at 15,

19, 24, 28, 32-33, 116, R. 329, 333, 338, 342, 346-47, 430; Dkt. 13-8 at 6, 40, 44, R.

456, 490, 494; Dkt. 13-9 at 12, R. 545).

As noted previously, on October 22, 2019, NP Joyner completed a Physical

Assessment Form. (Dkt. 13-7 at 136-37, R. 450-51). NP Joyner indicated, in relevant

part, that due to Kendra's multi-joint pain in her hands, hips, knees, and back, she

would frequently experience issues with attention and concentration; have slight

drowsiness from her pain medications; would need to take unscheduled breaks

every hour of the workday; could never lift less than 10 pounds; could use her arms

[9] Cervical radiculopathy (also known as a pinched nerve), is a condition that results in radiating pain, weakness and/or numbness that goes from the neck down into the shoulders and arms. *Cervical Radiculopathy*, https://www.yalemedicine.org/conditions/cervical-radiculopathy (last visited September 8, 2022).

[10] Lupus is an autoimmune disease that causes inflammation of multiple organs or organ systems, and commonly results in muscle and joint pain. *Lupus Symptoms*, https://www.cdc.gov/lupus/basics/symptoms.htm (last visited September 9, 2022); *What is systemic lupus erythematosus (SLE)?*, https://www.lupus.org/resources/what-is-systemic-lupus-erythematosus-sle (last visited September 9, 2022).

for reaching 10% of the day; could never use her fingers for fine manipulation; could use her hands to grasp, turn, and twist objects 5% of the day; and would be absent more than four times per month. (Id.). The ALJ recited each of these conclusions, and then stated:

> The undersigned finds this opinion unpersuasive because Ms. Joyner overestimated the claimant's limitations regarding sitting, standing, and walking. An orthopedic exam revealed the claimant's gait was steady and she was able to toe walk with good strength and stability, her straight leg raise was 90 degrees bilaterally, and her motor and sensory exam was normal in her bilateral lower extremities [Ex. 8F/23, 24]. In addition, the claimant's grip strength was good despite right bicep and bilateral finger extension, and she exhibited normal motor and sensory findings in her bilateral upper extremities, thus Ms. Joyner also overestimated the claimant's limitations involving her abilities to lift weight and perform activities with her bilateral arms and hands. Finally, the undersigned finds there was no objective evidence of record to support a finding that the claimant would be absent from work more than four times a month.

(Dkt. 13-2 at 27, R. 26).

Plaintiff argues that the ALJ failed to adequately consider the consistency and supportability of NP Joyner's medical opinion. The Court agrees. First, the Court notes that the ALJ appears to have selected only portions of Dr. Hellwarth's medical exam to demonstrate inconsistency, as noted above, while ignoring portions that would support a finding of consistency. *See Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV-178 JD, 2022 WL 2384031, at *4 (N.D. Ind. July 1, 2022) (error where ALJ does not explain how consistency is considered); *Rhaburn v. Kijakazi*, No. 2:20-CV-487-JPK, 2022 WL 4181288, at *4-6 (N.D. Ind. Sept. 13, 2022) (ALJ errs by cherry-picking normal findings and failing to adequately consider consistency of

records); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (ALJ erred by ignoring line of contradictory of evidence).

Additionally, it appears from the Court's review that the ALJ also failed to consider the supportability of NP Joyner's opinion. This was clear error, as the Court is prevented from conducting any sort of meaningful review. *Winkel v. Kijakazi*, No. 3:20-CV-715 DRL, 2021 WL 4988528, at *5 (N.D. Ind. Oct. 27, 2021) (remand required where ALJ is silent on supportability). While the ALJ found NP Joyner "overestimated" Kendra's claimed limitations, the ALJ fails to provide support for this conclusion. Moreover, this is especially troubling given the fact that NP Joyner's records make up almost the entirety of the medical evidence in the record, with the Court having already summarized several of these records *supra*. NP Joyner's opinion appears to find support in her own records and does not appear to be entirely inconsistent with Dr. Hellwarth's exam findings and medical recommendations. With the ALJ providing such a limited analysis, however, the Court is prevented from conducting meaningful review. Because the ALJ did not adequately consider the consistency and supportability of NP Joyner's medical opinion, the Court remands this matter for further consideration.

### B. Step Two Analysis

Plaintiff next argues that the ALJ erred by deeming her hand limitations not the result of a medically determinable impairment. (Dkt. 17 at 18-20). Specifically, Plaintiff maintains that the ALJ's conclusion that no specific diagnosis or treatment existed for her hand limitations was not supported by substantial evidence. (Id.).

The Commissioner contends that the ALJ's decision was supported by substantial evidence or, alternatively, that the ALJ's failure to find a medically determinable impairment was harmless error. (Dkt. 18 at 12-14).

At Step Two of the five-step sequential analysis, the ALJ must determine whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. § 404.1521. An impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques; thus, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. *Id*.

When determining the RFC[11], the ALJ must make a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. SSR 96-8p, 1996 WL 374184, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains

---

[11] The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

16

sufficient evidence" to assess the RFC. *Id.* The Agency Regulations make clear, however, that the RFC must only include limitations and restrictions attributable to medically determinable impairments. Social Security Ruling 96-8p 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Here, Kendra argues that the record contains sufficient objective evidence to support the existence of a medically determinable impairment related to her hands. (Dkt. 17 at 18-20).

At Step Two, the ALJ states:

> Additionally, the record indicates the claimant reported or exhibited certain signs and symptoms that never culminated into a specific diagnosis establishing a medically determinable impairment. A medically determinable impairment may not be established solely on the basis of "symptoms alone," or on a claimant's allegations regarding symptomatology (20 CFR 404.1508, 416.908, and SSR 96-4p). In this regard, the claimant complained of significant hand limitations [Hearing estimony]. Primary care records from September 2018 indicate the claimant complained of numbness in her hands, and a physical exam revealed numbness with dorsiflexion [Ex. 2F/26]. During an encounter in October 2019, the claimant reported that she could not do small manipulation with her hands [Ex. 7F/4]. A physical exam revealed hand stiffness and tenderness. X-rays of the claimant's bilateral hands performed in October 2019 revealed normal results [Ex. 7F/45]. In December 2019, the claimant was unable to keep her thumb and index finger in an O against pressure [Ex. 8F/16]. However, orthopedic records from February 2020 revealed the claimant's grip strength was good bilaterally despite weakness with bilateral finger extension [Ex. 8F/24]. Records do not indicate any diagnosis nor treatment specifically associated with the claimant's hand numbness and weakness. As a result, this is not medically determinable.

(Dkt. 13-2 at 16, R. 15).

It appears the ALJ omitted evidence from his Step Two analysis that directly contradicts his Step Two conclusions. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a

finding of non-disability while ignoring evidence that points to a disability finding."
*Anthony E. v. Kijakazi*, No. 20-CV-00718, 2022 WL 3908584, at *5 (N.D. Ill. Aug. 30,
2022) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). First, the ALJ
stated that no specific diagnoses existed related to Kendra's hand numbness and
weakness. The Plaintiff argues that she received a diagnosis of carpal tunnel
syndrome[12] from NP Joyner on July 13, 2018 (Dkt. 17 at 18-19) (citing Dkt. 13-7 at
33, R. 347), while the Commissioner maintains that NP Joyner never entered a
specific diagnosis. (Dkt. 18 at 12-13). On the Court's review, the ALJ did not
mention NP Joyner's July 13, 2018 record and possible carpal tunnel syndrome
diagnosis at any point in his decision; thus, the Court is unable to determine
whether the ALJ considered this evidence and its impact on whether a diagnosis
existed to support Kendra's claims of a hand impairment.

The bar for determining whether an impairment is medically determinable is
extremely low – Step Two is merely a *de minimis* screening for groundless claims
intended to exclude only those slight abnormalities that only minimally impact a
claimant's basic activities. *Amanda M.*, 2021 WL 1206569, at *2 (citing *O'Connor-
Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016)). Here, the ALJ appears to have
ignored a line of evidence that could support a finding of disability. *Sheila S. v.
Kijakazi*, No. 19 CV 6390, 2022 WL 2704033, at *4 (N.D. Ill. July 12, 2022) (citing
*Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)) (ALJ erred by ignoring line

---

[12] Carpal tunnel syndrome is a condition caused by pressure on the median nerve, which can cause
numbness, tingling, and weakness in the hand and arm. *Carpal tunnel syndrome*,
https://www.mayoclinic.org/diseases-conditions/carpal-tunnel-syndrome/symptoms-causes/syc-
20355603 (last visited September 8, 2022).

of evidence that could support finding of disability)[13]. "Because the 'scope and severity' of a claimant's impairments evaluated at step two lays the foundation for the ALJ's remaining determinations, including the claimant's RFC and the questioning posed to the vocational expert, 'remand is warranted where the ALJ fails to consider the entirety of the evidence at Step Two.'" *Taylor T. o/b/o Lori T. v. Kijakazi*, No. 1:21-cv-01952-MJD-JPH, 2022 WL 1702068, at *8 (S.D. Ind. May 27, 2022) (citing *Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1005 (7th Cir. 2008)). There are multiple diagnoses that could relate to Plaintiff's hand impairments and a two year history of medical records dealing with Plaintiff's hand concerns, complete with objective testing confirming those concerns. Moreover, Plaintiff has presented objective medical evidence, clinical examinations, her own testimony and allegations, and a treating nurse practitioner's opinion that all seem to support her assertion that she has a medically determinable impairment related to her hands. With the ALJ seeming to overlook certain evidence that contradicts his conclusion and failing to acknowledge a possible diagnosis of carpal tunnel syndrome, the

---

[13] Several cases from this Circuit are instructive on this issue. First, in *Romeu G. F. v. Kijakazi*, the Court found error where the ALJ failed to sufficiently confront the significant evidence that supported a finding of a medically determinable impairment of the cervical spine. No. 2:21-CV-280, 2022 WL 3367935, at *3-4 (N.D. Ind. Aug. 16, 2022). Next, in *Angela O. v. Kijakazi*, the objective medical evidence, clinical observations, Plaintiff's testimony, and the statement of a treating nurse practitioner all supported a finding of a severe impairment in the claimant's feet and the ALJ's failure to consider the evidence contradictory to her conclusion required remand. No. 4:21-CV-52, 2022 WL 1468252, at *4-5 (N.D. Ind. May 10, 2022). Finally, in *Amanda M. v. Saul*, the Court noted that the required question at Step Two is whether a condition causes "slight abnormalities that only minimally impact a claimant's basic activities" and concluded that Plaintiff had presented sufficient evidence that contradicted the ALJ's conclusion, an error which required remand. No. 2:20-cv-00046-JPH-MJD, 2021 WL 1206569, at *4-5 (S.D. Ind. Mar. 31, 2021).

Court lacks the opportunity for meaningful review to decide whether the ALJ's conclusion was adequately supported.

The Commissioner argues that harmless error occurred because, regardless of whether the ALJ deemed Kendra's hand limitations the result of a medically determinable impairment at Step Two, the ALJ went on to consider the relevant evidence during the RFC analysis and relied on the state agency physicians' opinion that Kendra had no manipulative limitations when crafting the RFC. (Dkt. 18 at 12-13). First, the ALJ never mentions the state agency physicians' opinions that Plaintiff had no manipulative limitations, despite specifically mentioning other sections of their opinions. Thus, to say that the ALJ considered the state agency physicians' opinions that Kendra required no manipulative limitations and in turn included no limitations in the RFC is a post-hoc rationalization at best. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.")

Second, the Commissioner is correct that some errors at Step Two may be harmless if the ALJ reasonably considers the relevant evidence during the RFC analysis. *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015) (citing *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)). Here, however, the issue was not whether the ALJ correctly decided that an impairment was severe or non-severe,

but rather whether the ALJ determined an impairment existed at all.[14] *See Paula K. v. Saul*, No. 1:20-CV-318, 2021 WL 2802575, at *8 (N.D. Ind. July 6, 2021) (error not harmless because ALJ could not account for combined effects of a condition in RFC when ALJ did not find a medically determinable impairment); *see also James M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-08745-NLH, 2022 WL 3152638, at *4 (D.N.J. Aug. 8, 2022) (error not harmless when ALJ determines an impairment is not medically determinable). The Court cannot conclude that the ALJ's error was harmless because if the ALJ were to find a medically determinable impairment related to Plaintiff's hands, he would be required to consider that impairment when crafting the RFC; if any RFC limitations were added to accommodate Plaintiff's hand impairment, she very well may have been found disabled. Thus, because this matter is being remanded for further consideration of NP Joyner's medical opinion, on remand the ALJ should provide further consideration of whether a medically determinable impairment exists related to Plaintiff's hands.

## V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/21/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

---

[14] "This distinction make[s] sense because erring on the issue of severity at step two does not exclude the impairment from later consideration whereas erring on medical determinability surely does." *Ann S v. Kijakazi*, No. 2:20-CV-00841-JCB, 2022 WL 204596, at *5 (D. Utah Jan. 24, 2022).

Distribution:

All ECF-registered counsel of record via email